## Rauenzahn v. Sigman, Appellant.

Argued November 17, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*J. Kennard Weaver,* with him *Weaver, Knauer & Miller,* for appellant.

*Robert Boyd, Jr.,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 4, 1954:

An elderly couple succeeded in weaving a tangled web when they first attempted to deceive a fraternal home which admitted them under a contract that in consideration of a transfer to the home of all their assets it agreed to maintain and care for the couple during their respective lives. Two nieces are claiming the cash and securities of the deceased wife who survived her husband. One niece claims under an alleged *inter vivos,* gift, while the other one is the sole beneficiary under a will.

James L. Waggaman and his wife, Emma F. Waggaman, each about seventy-nine years of age, desired to enter the Odd Fellows Home in Middletown. They deeded their dwelling to the home, but in violation of their agreement certified in their application for admission that this constituted their entire assets. Such statement was untrue. They had withheld money and securities which they placed in the hands of Ralph Sigman, husband of defendant, Ethel M. Sigman. The home, learning of the deception, insisted that the Waggamans leave the institution. A compromise was effected whereby the home was reimbursed for the cost of care and maintenance while the couple was in the home, and an agreed sum of money was refunded to them. These are the assets about which the litigation revolves.

Upon leaving the home the Waggamans lived together in Philadelphia. James L. Waggaman subse-

quently died and his estate is represented by an administrator *de bonis non*. Emma F. Waggaman went to live with Mr. and Mrs. Raymond K. Rauenzahn and subsequently died. Her estate is represented by the niece's husband, Raymond K. Rauenzahn as executor. Under the will of Emma F. Waggaman, the niece is sole beneficiary.

Prior to her decease Mrs. Waggaman, individually and as administratrix of her deceased husband's estate, instituted a suit against her niece, Ethel M. Sigman, the defendant (Mrs. Sigman's husband having died), seeking the return of the money and securities and for an accounting. Pending this litigation Mrs. Waggaman died. Her executor and an administrator *de bonis non* of her husband's estate were substituted as plaintiffs.

Mrs. Sigman, the defendant, contested the suit on the ground that Mrs. Waggaman had, by *inter vivos* gift, transferred to her the money and securities which defendant then held in her possession. The plaintiffs, on the contrary, maintain that Mrs. Sigman holds the property under a resulting or constructive trust for the estates of Mr. and Mrs. Waggaman.

Voluminous testimony was taken which is before us in *forma pauperis*. Judge CRUMLISH commenced the hearing, but later, because of the complicated accounting involved, and with the consent of counsel for all parties, appointed a master who heard the testimony. The master died before filing his report and a substituted master was appointed. The substituted master filed his report which was adopted and approved by the court. It was ordered and decreed that Mrs. Sigman, the defendant, turn over to the plaintiffs $3,238.35 in cash and the securities listed in the report, less the amount of the masters' fees fixed by the court. An appeal was taken to this Court.

Were it not for the fact that a paper, hereinafter referred to, was received in evidence, subject to its relevancy, and thereafter objection thereto sustained, the findings of fact made by the substituted master and adopted by the court were amply supported by the evidence. This justified the entry of the decree appealed from. We are not in accord, however, either with the substituted master's ruling upon the admissibility in evidence of the document in question or its legal effect. The master in his report states (p. 11):

". . . the defendant produced for the first time a typewritten sheet purportedly signed by Emma F. Waggaman . . . [the complete copy of which is as follows]:

"Philadelphia, Pa.

Date May, 1948.

"I HEREBY give all stocks in all following names to Ethel M. Sigman, as I and my husband, James Waggaman endorsed and handed all of them to Ethel, requesting her to keep them for herself.

"I HEREBY give authority to Ethel M. Sigman, to either sell or to have transferred any or all stocks in the name of Emma S. Waggaman and James Waggaman,

James Waggaman and
Emma F. Waggaman,

James Waggaman and
Emma S. Waggaman

Emma F. Waggaman
or
James Waggaman

Signed

---

/s/ Emma F. Waggaman"

The master continued: "Your Substituted Master ruled that since this document was not produced in the life-

time of Emma F. Waggaman it was inadmissible in evidence. However, it is rather astonishing that although the answer to the Bill of Complaint admits that certain stocks were being held by her subject to the instructions of Emma F. Waggaman and the Bill was sworn to by the defendant on October 21, 1949, she nevertheless withheld this most valuable bit of evidence to the present time. Your Master is of the opinion that *even if this document were admissible, that it should not be accepted as credible evidence. If the signature to this paper is not a forgery, then the typing thereon was imposed on the paper after Emma F. Waggaman had signed her name thereon.*" (Italics supplied)

The letter was offered in evidence by the defendant at a hearing on June 16, 1952. The master, over objection, ruled: ". . . the letter may be made part of the record". He also ruled: "Your letter is being received, subject to legal objection. Under the rules of evidence, *the death of one of the parties shuts the mouth of the other party, and this should have been presented in the lifetime of Mrs. Waggaman.* However, it is being received for action by the Court, but my ruling is that it is not admissible." (Italics supplied)

We do not approve this ruling. Standing alone, *unsupported by relevant testimony,* the master, solely because of surmise, deduction and reasoning, may not rule that such document was inadmissible (a) because not produced in the lifetime of Emma F. Waggaman (b) that even if admissible, it must be rejected as not credible (c) if the signature is not a forgery then the typing must have been superimposed over a genuine signature.

Deductions, reasoning and conclusions, in the absence of relevant testimony, are not justified. Testimony must be adduced concerning the genuineness of

the signature. If the signature proves to be genuine, then in order to invalidate the document, evidence must be presented to establish the superimposition of the writing over such genuine signature. It might have been possible for defendant to have introduced testimony to explain why the placing of the paper in evidence was so unduly and suspiciously delayed. Presentation of *written* evidence, *after death,* signed by a donor, does not thereby render such document inadmissible under the Act of May 23, 1887, P. L. 158 sec. 5 (e), 28 PS 322. Only *testimony* of a surviving party with an adverse interest is rendered incompetent by the Act.

The record is remanded to the court below, limited solely and exclusively to a determination of the admissibility and validity of the document herein referred to and, if admissible, its effect on the ultimate result.

The decree is reversed, with direction as above stated, for the purpose of thereafter filing a final decree in accordance with this opinion. Costs to abide the event.